IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DARWIN STEWART, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| VS. ) | No. 13-2824-JDT-dkv |
| ) | |
| SHELBY COUNTY, ) | |
| ) | |
|     Defendant. ) | |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On October 22, 2013, Plaintiff Darwin Stewart, who was, at the time, incarcerated at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 10.) On January 10, 2014, the Court issued an order directing the Clerk to issue process for the Defendant, Shelby County. (ECF No. 11.) On February 11, 2014, Plaintiff notified the Clerk of his new address, which indicated he had been released. (ECF No. 18.) Before the Court is the Defendant's motion for summary judgment. (ECF No. 20.) Plaintiff has not responded to the motion or sought an extension of time in which to do so.

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

>   (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[1] or
>
>   (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

>   (1)   give an opportunity to properly support or address the fact;
>
>   (2)   consider the fact undisputed for purposes of the motion;
>
>   (3)   grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or
>
>   (4)   issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[1] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

> bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The fact that Plaintiff did not respond does not require granting Defendant's motion. Nevertheless, if the allegations of the complaint are contravened by Defendant's evidence and

3

Defendant is entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

The factual allegations in the complaint consist of only one sentence: "I have been raped while in this facility and nothing has been done about it and it has happened to me repeatedly." (ECF No. 1 at 2.) Attached to the complaint is a copy of a grievance Plaintiff filed on June 27, 2013, in which he states, "this has been going on scense [sic] I've been here 2-18-13 was the second time I had reported being raped while I was sleeping. And nothing has changed. This has been happening scense [sic] I have been here." (ECF No. 1-1.)

Shelby County first contends that it is entitled to judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies. In support of the motion for summary judgment, the County has submitted the Affidavit of Chief Jailer Robert L. Moore. (Moore Aff., ECF No. 20-1.)

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). However, a prisoner is not required to demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216. Failure to exhaust is an affirmative defense on which the defendant has the burden of proof. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

4

Section 1997e(a) requires not merely exhaustion of the available administrative remedies, but *proper exhaustion* of those remedies, meaning that a prisoner must comply with the institution's "critical procedural rules," such as time limits for filing grievances. *Woodford v. Ngo*, 548 U.S. 81 (2006).

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Id.* at 95. *See also Jones*, 549 U.S. at 218.

"An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Thus, an inmate who does not timely pursue all available levels of the grievance procedure has not properly exhausted a particular claim. The Sixth Circuit requires prisoners "to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224). "[I]f the plaintiff contends he was prevented from exhausting his remedies . . . the defendant [must] present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles v. Andison*, 678 F.3d 452, 458 n.10. (6th Cir. 2012).

Chief Moore states in his affidavit that he is a custodian of records for the Jail. Those records, which are maintained in the ordinary course of business, show that Plaintiff was booked into the Jail on November 2, 2012, and released on January 2, 2014. (ECF No. 20-1 at 1-2, ¶¶ 2-3, 5.) Moore indicates that all inmates are given an Inmate Handbook when they enter the Jail, which

5

advises them of their right to file grievances about their confinement and tells them about the grievance procedure. Grievance forms are readily available. (*Id.* at 2, ¶ 6.) Pursuant to the grievance procedure, a grievance must be filed within thirty days after the incident being grieved. One a response is received, any appeal must be filed within seven days. (*Id.* ¶ 7.)

On November 28, 2012, Plaintiff first reported that he had been raped in his cell the previous week, during the night while he was sleeping. He was taken to the medical department and the report was investigated. However, Plaintiff did not identify an assailant and could provide no details about the assault. Following that report, Plaintiff was housed by himself until his release. Plaintiff did not file a grievance at that time. (*Id.* at 5, ¶ 17.A; *id.* at 11-12.)

On February 18, 2013, Plaintiff reported he had been raped two days earlier while he was asleep at night. An investigation was conducted, and Plaintiff could not identify the person who assaulted him. Plaintiff asserted that he had not showered since the attack; therefore, he was taken to the Rape Crisis Center for a forensic examination. The Rape Crisis Center reported that the examination did not indicate the presence of semen. (*Id.* at 5, ¶ 17.B; *id.* at 13-15.) On May 29, 2013, Plaintiff put a letter in the disciplinary box claiming that several midgets were coming into his cell at night and raping him while he slept. An investigation was conducted, and Plaintiff was taken to the medical department. He was referred for a psychiatric evaluation. (*Id.* at 6, ¶ 17.C; *id.* at 16-17.)

Plaintiff filed a grievance on June 27, 2013, concerning the February 2013 incident; the grievance was received on July 8, 2013. Even though the grievance was not timely, the incident was investigated for a second time. (*Id.* at 3, ¶ 9.) Plaintiff repeated his claim that midgets were coming into his cell at night and raping him. He was referred for mental evaluation. (*Id.* at 6, ¶ 17.D; *id.*

at 18-19.) Plaintiff's grievance history does not show that he appealed the Jail officials' response to his grievance. (*Id.* at 3, ¶ 10.)

On September 30, 2013, November 20, 2013, and November 23, 2013, Plaintiff again reported that he was repeatedly being raped in his cell by midgets while he slept at night. He also claimed that the Rape Crisis Center had altered the test results from the earlier forensic examination. Each of Plaintiff's reports was investigated. After Plaintiff made the November 23, 2013, report, he was taken to the medical department, where he told a nurse that he did not know what the jailers were talking about, he just wanted to be relocated. (*Id.* at 6-7, ¶¶ 17.E-17.G; *id.* at 20-25.)

Chief Moore states that Plaintiff did not identify anyone, other than midgets, who was assaulting him. All of his reports of rape were investigated in accordance with the Jail's Sexual Assault policy, and appropriate actions were taken. (*Id.* at 7, ¶ 18.) The grievance filed on June 27, 2013 concerning the February incident was the only grievance Plaintiff filed about any of the alleged assaults. (*Id.* at 3, ¶ 9.)

In his complaint, Plaintiff asserted in a conclusory manner that he "exhausted the grievance system[,] still I got no relief." (ECF No. 1 at 2.) However, Plaintiff has not responded to the motion for summary judgment; therefore, he has failed to submit any specific evidence to refute that offered by Defendant on the exhaustion issue. There also is nothing in the record suggesting that Plaintiff attempted to appeal his grievance or to file other grievances about these alleged assaults but was in any way prevented from doing so.

The undisputed evidence in the record shows that Plaintiff failed to exhaust his administrative remedies with regard to his claim in this case. Therefore, Shelby County is entitled to judgment as a matter of law on that basis alone.

However, Plaintiff has also failed to demonstrate that there are genuine issues of material fact for trial on his Eighth Amendment claims against Shelby County. When a § 1983 claim is made against a municipality or county, the Court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

Plaintiff has offered no evidence that any employee of the Jail was aware of and disregarded an excessive risk to his health or safety, *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Instead, the evidence shows that each time Plaintiff reported he was raped, Jail officials investigated and took appropriate action. The reports of assault were not substantiated by any of the investigations and, in fact, appear to have been either deliberately false or a product of Plaintiff's mental impairment.

Even if a Jail employee had violated Plaintiff's constitutional rights, Shelby County would not automatically be liable. A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815

(6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

In this case, Plaintiff has offered no evidence demonstrating that any alleged injury arose from an unconstitutional policy or custom of Shelby County.

For all of these reasons, the Court finds that the Defendant is entitled to judgment as a matter of law. Therefore, the motion for summary judgment is GRANTED.

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma pauperis*, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Fed. R. App. P. 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed *in forma pauperis* in the district court, he may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed

in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Plaintiff is not taken in good faith. Leave to proceed on appeal *in forma pauperis* is, therefore, DENIED. Accordingly, if Plaintiff files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.[2]

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                                   s/ **James D. Todd**
                                                   JAMES D. TODD
                                                   UNITED STATES DISTRICT JUDGE

---

[2] Pursuant to Fed. R. App. P. 3(a), any notice of appeal should be filed in this Court. A motion to appeal *in forma pauperis* then should be filed directly in the United States Court of Appeals for the Sixth Circuit. Unless he is specifically instructed to do so, Plaintiff should not send to this Court copies of motions intended for filing in the Sixth Circuit.